IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LEE ROGERS** | § | **PLAINTIFF** |
| | § | |
| **V.** | § | **Civil No. 1:04CV00839HSO-RHW** |
| | § | |
| **OPERATIONS TECHNOLOGIES, INC.** | § | **DEFENDANT** |
| | § | |

## ORDER AND REASONS GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion of the Defendant Operations Technologies, Inc. ["OpTech"], for Summary Judgment [36], pursuant to FED. R. CIV. P. 56, filed in the above-captioned cause on February 21, 2007.  Plaintiff filed a Response and the Defendant filed a Rebuttal.  After consideration of the submissions and the relevant legal authorities and for the reasons discussed below, the Court finds that the instant motion should be granted.

## I. FACTS AND PROCEDURAL HISTORY

The City of Pascagoula ["the City"] and OpTech entered into a contract commencing on June 1, 2003, in which OpTech was to operate the City's public works department.  As part of the contract, employees working for the City had the opportunity to apply for positions with OpTech which were similar to those they occupied with the City.  At that time, Plaintiff–a forty-three (43) year old African-American male–was employed by the City as an Engineering Technician.  Plaintiff submitted his resume to OpTech and was subsequently hired in his capacity as an Engineering Technician.

Shortly after the OpTech takeover, a twenty-five (25) year-old Caucasian employee, Allen Davis, was promoted to the new position of Assistant Project Manager.  The position was created solely for Davis and was not opened for competition.  As part of the promotion, Plaintiff claims that a portion of his duties were allocated to Davis.

OpTech decided to eliminate the Engineering Technician position due to insufficient work.  OpTech also determined that a new position of Warehouse Manager was needed as a result of a newly implemented "Capacity Management Operations Maintenance System" [CMOM].  It is undisputed that the rate of pay was equivalent between the Plaintiff's Engineering Technician position and the new Warehouse Management position.  OpTech considered three individuals for the new position (two Caucasians and Plaintiff), and ultimately determined that the Plaintiff was the best candidate, as he could fulfill the management position while continuing the limited duties he was performing under the engineering position. Like the Assistant Project Manager position, the Warehouse Manager job was not announced for competition.

According to OpTech, on or about January 13, 2004, OpTech management met with Plaintiff to advise him of their intentions to eliminate the Engineering Technician position, and asked him to consider the new position of Warehouse Manager.  Plaintiff admits that he became upset, stating that the position of Warehouse Manager was insulting, degrading, and a "slap in the face."  Pl.'s Depo.

-2-

at p. 36-37, 59, Exhibit "A-1" to Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J.
Following the meeting, Plaintiff then voiced his negative opinion of the position to
other employees.  Id. at p. 49.

There is no dispute that on or about January 15, 2004, OpTech management
met again with Plaintiff to discuss the position.  Plaintiff claims that at the
January 13 meeting, OpTech asked him his feelings about the new position but did
not actually offer it to him until the January 15 meeting.  Id. at p. 54-55.  Plaintiff
asserts that he attempted to accept the position on January 15, indicating that he
had bills to pay and needed the money.  Id. at p. 54.  He claims that OpTech
management advised that they were giving the position further consideration.  Id.
at 56-57; Defs.' Rule 30(b)(6) Depo. at p. 120, Exhibit "2" to Defs.' Mot. for Summ. J.

On or about January 16, 2004, in a third meeting with OpTech management,
Plaintiff was provided a letter of termination.  Pursuant to the letter, OpTech's
basis for Plaintiff's termination was Plaintiff's untoward attitude when offered the
managerial position on January 13.  When Plaintiff asked why they were
terminating his engineering position, OpTech management replied that there were
"simply not enough job duties to warrant the position."  Defs.' Rule 30(b)(6) Depo. at
p. 129, Exhibit "2" to Defs.' Mot. for Summ. J.  Subsequently, Angela Guthrez–a
Caucasian female two [2] years younger than Plaintiff–filled the Warehouse
Manager position, and Kevin Hall–a Caucasian male six [6] months younger than
Plaintiff–inherited those limited duties performed by Plaintiff prior to his

termination.  These two individuals were the other two, besides Plaintiff, who had been considered initially for the Warehouse Manager spot.

Plaintiff exhausted his administrative remedies in this case by lodging a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on race, age, and retaliation.  Exhibit "5" to Defs.' Mot. for Summ. J.  The EEOC was unable to establish statutory violations and issued Plaintiff a Notice of Right to Sue.  Id.  The Plaintiff filed his Complaint in this Court seeking damages for wrongful termination, employment discrimination on the basis of race and age, and reprisal under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., the Age Discrimination in Employment Act of 1967 [ADEA], 29 U.S.C. § 621, et seq., 42 U.S.C. § 1981 and under the laws of the state of Mississippi.  Pursuant to Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff confesses judgment as to his state law emotional distress claim.

OpTech now moves this Court to completely dismiss the present case based upon Plaintiff's inability to 1) provide sufficient evidence to establish a prima facie case of age or race discrimination or retaliation, or, 2) provide any evidence from which a jury could reasonably find that OpTech's reasons and/or actions for Plaintiff's termination were mere pretext.  Plaintiff opposes such dismissal, asserting that genuine issues of material fact exist.

## II. <u>DISCUSSION</u>

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *See Booth v. Wal-Mart Stores, Inc.*, 75 F.Supp.2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *See id.* at 543 (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, a plaintiff must present significant probative evidence, since there is no issue for trial unless

there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Booth*, 75 F.Supp.2d at 543. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *See Booth,* 75 F.Supp.2d at 543.

A.   Race and Age Discrimination

   1.  *Plaintiff's Prima Facie Case*

   Title VII makes it "an unlawful employment practice for an employer...to discharge...or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race..." 42 U.S.C. § 2000e-2(a)(1). Similarly, section 1981 states "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...as is enjoyed by white citizens." 42 U.S.C. § 1981. The ADEA, on the other hand, provides that "it shall be unlawful for an employer...to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). Title VII discrimination claims, section 1981 claims, and ADEA claims share the same analytical framework. *See Roberson v. Alltel Information Services*, 373 F.3d

647, 651 (5th Cir. 2004).  Because the same facts underlie all three causes of action in the case *sub judice*, the Court will address them in unison.

A claim of intentional discrimination can be proved through either direct or circumstantial evidence.  *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  Where the record is devoid of direct evidence of discrimination, the plaintiff must rely on circumstantial evidence to carry his or her burden.  *See id*.  In establishing causation through circumstantial evidence, the tripartite burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies.  *See Portis v. First Nat'l Bank,* 34 F.3d 325, 328 (5th Cir.1994) ("Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas,* [which] establishes a prima facie case by inference.").

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination.  *See McDonnell Douglas Corp.,* 411 U.S. at 802.  In so doing, a plaintiff must demonstrate that he or she (1) suffered an adverse employment action; (2) was qualified for the position; (3) was within the protected class at the time of the decision; and, (4) that the person selected was not within the protected class, or, that others similarly situated but not within the protected class were more favorably treated, or, that the Plaintiff was otherwise discharged because of age.  *See Rios v. Rossotti,* 252 F.3d 375, 378 (5th Cir. 2001); *Eaves v. K-Mart Corp.*, 193 F.Supp.2d 887, 893 (S.D. Miss 2001); *see*

-7-

*also Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir. 1996) (holding that the prima facie analysis concerning the elimination of an employee's position where no other employees were "similarly situated" fell under the standard evidentiary analysis).  Alternatively, where the employee's position has been eliminated through a reduction-in-force [RIF], a plaintiff must instead demonstrate: (1) membership in the protected class; (2) an adverse employment action; (3) qualifications to assume another position available at the time of the discharge or demotion; and (4) direct or circumstantial evidence tending to indicate that the employer intended to discriminate in reaching its decision.  *See Woodhouse v. Magnolia Hosp.,* 92 F.3d 248, 252 (5th Cir. 1996)*; see also Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir. 1996); *Amburgey v. Corhart Refractories Corp., Inc.* 936 F.2d 805, 812 (5th Cir. 1991).

If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating–not proving–a legitimate, nondiscriminatory reason for the adverse employment action.  *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000).  An employer meets its burden of production by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer.  *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507 (1993); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir. 1993); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir. 1991).  Once an employer articulates a

legitimate, nondiscriminatory reason for its action, the burden shifts to the plaintiff to produce sufficient admissible evidence demonstrating "(1) (the) employer's reason is pretext, or (2) (the) employer's reason, while true, is only one reason for its conduct, and another motivating factor is [the] employee's protected characteristic." *Burrell v. Dr. Pepper/ Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *Purcell v. Sequin State Bank and Trust Co.,* 999 F.2d 950, 957 (5th Cir. 1993). In situations where an employer's reasons are "unpersuasive, or even obviously contrived," the plaintiff must nevertheless prove that the proffered reasons were but a pretext for discrimination. *See St. Mary's Honor Center,* 509 U.S. at 523. Ultimately, in determining whether the case is one of intentional discrimination, "a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000)*(quoting Reeves*, 53 U.S. at 148-49). Although intermediate evidentiary burdens shift back and forth under the framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

It is clear that Plaintiff–an African-American who was forty-three [43] years old at the time of his termination–is a member of two protected groups for purposes of Title VII, section 1981, and the ADEA. Further, Plaintiff's January 16, 2004

termination, as well as his failure to be hired into the Warehouse Manager position, qualify as adverse employment actions for purposes of *McDonnell Douglas*.  The Fifth Circuit details that such adverse actions include, but are not limited to, "hiring, granting leave, *discharging*, *promoting*, and compensating."  *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir. 2004) (*emphasis added*).  It is also undisputed that Plaintiff possessed the qualifications necessary to either continue the job duties he was performing under the Engineering Technician position, or, to fulfill the position of Warehouse Manager.  Plaintiff satisfies the first three elements of his prima facie case regardless of the test which is applied, either the test for standard discrimination claims or RIF claims.  It is the fourth and final element under both tests which proves more troublesome for Plaintiff.

In order to give Plantiff the benefit of the doubt, the Court will conduct the prima facie analysis both under the standard and RIF evidentiary burdens discussed earlier.  By definition, a RIF occurs "when business considerations cause an employer to eliminate *one* or more positions within a company."  *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 895 (6th Cir. 1997)(*emphasis added*); *see also Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000) (finding a "mini-RIF" occurs when only one employee is discharged).  However, the Fifth Circuit has noted that the RIF standard "applies only when a company lays off protected individuals, while retaining younger employees in *similar* positions."  *Brown*, 82 F.3d at 654.  Regardless of which evidentiary standard is employed, the result remains the same.

The Fifth Circuit has made it clear that "to establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *see also Amburgey*, 936 F.2d at 812. However, mere allegations and subjective beliefs void of any evidentiary support are insufficient to create an inference of discriminatory intent. *See Armendarix v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995); *Roberson v. Alltel Info. Services*, 373 F.3d 647, 654 (5th Cir. 2004).

In the case *sub judice*, Plaintiff lists a series of rhetorical questions in an effort to satisfy his burden. Pl.'s Mem. Br. in Opp'n to Mot. for Summ. J. p. 9-10. Essentially, Plaintiff argues that the following circumstances equate to evidence sufficient to satisfy his burden: 1) that OpTech provided "different" reasons for Plaintiff's termination; 2) OpTech's malfeasance in hiring Plaintiff when it "knew" the Engineering Technician position would be eliminated and its failure to inform him regarding same; 3) OpTech's subsequent hiring of another employee, Angela Guthrez, for the Warehouse Manager position when it had initially "rejected" that employee; and 4) OpTech's prior non-competitive promotion of employee Allen Davis, who was–as part of his promotion–assigned various jobs Plaintiff had been performing. Id. Regarding his age discrimination claim, Plaintiff's circumstantial evidence concerned the promotion given to Davis. Id. at p. 13.

As to the first two allegations against OpTech, the Court finds no evidence in

-11-

the record probative of intentional discrimination.  First, the Plaintiff subjectively believes that OpTech offered varying reasons for Plaintiff's termination; however, as evidenced by the record, OpTech had *various* reasons for his termination, not *varying* reasons.  Namely, OpTech set forth–by way of written and verbal communications–the following reasons for discharge: 1) there were insufficient job responsibilities to justify retaining the Engineering Technician position; 2) the Engineering Technician position had been eliminated; and, 3 ) because of Plaintiff's negative attitude about the new warehouse management position when it was discussed with him, OpTech decided another employee would be better suited for the position.  Pl.'s Mem. Br. In Opp'n to Mot. For Summ. J. p. 6; Ex. "E"to Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J.  These reasons do not *conflict* with one another, but rather, they *correspond* with one another.  Second, the Plaintiff points to no evidentiary support regarding any knowledge by OpTech that Plaintiff's engineering position would be terminated when it hired Plaintiff.  According to Plaintiff's deposition testimony, the only evidence presented of OpTech's knowledge regarding the elimination of the Engineering Technician position at the time of the takeover was the fact that "they got rid of it."  Pl.'s Depo. at p. 100-101, Exhibit "A-2" to Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J.

The last two allegations against OpTech could arguably support an inference of discrimination, if supported by sufficient evidence.  In examining Plaintiff's burden under both the standard and RIF frameworks, it appears that Plaintiff potentially satisfies his race discrimination burden on two fronts.

First, as to the Warehouse Manager position, there is no dispute in the record that at the time the Engineering Technician position was being eliminated, there was an opening for the position of Warehouse Manager, for which Plaintiff was qualified.  Further, there is no dispute that Plaintiff was not hired for the position, but Angela Guthrez, a Caucasian, was hired.  Given these facts, it is immaterial whether the prima facie race discrimination analysis is conducted using the standard or RIF burden since, according to Fifth Circuit caselaw, they could both result in an inference of race discrimination in this instance.  *See Blow v. City of San Antonio, Tex.,* 236 F.3d 293, 296 (5th Cir. 2001) (finding–in a non-RIF case–the fourth prima facie element satisfied in a failure to promote claim where the Plaintiff was qualified for a librarian position which was filled by a white male); *see also Amburgey*, 936 F.2d at 812 (finding–in a RIF case–the fourth prima facie element satisfied where the Plaintiff was qualified for open positions which were filled by employees outside the protected class).

Second, Plaintiff can arguably satisfy his race discrimination burden with regard to those duties he was performing under the Engineering Technician function.  It is undisputed that following his termination, these duties were reassigned to Kevin Hall, a Caucasian.  It has been recognized that where "only one position [is] eliminated and the duties of that person [are] simply absorbed by the other employees[,]...the fourth prong of the prima facie case is met by showing that the plaintiff was 'constructively replaced,' in other words that his responsibilities were absorbed by employees not in the protected class."  *Gadsby v. Norwalk*

*Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995); *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043 (7th Cir. 2000); *see also Trejo v. Cingular Wireless, LLC*, 2007 WL 1189643 (S.D. Tex. 2007). Construing the evidence in the light most favorable to the non-movant, as the Court must, Plaintiff has arguably met his burden in showing a prima facie case of race discrimination.[1]

Plaintiff's prima facie age discrimination case is more problematic. Plaintiff supports his age discrimination claim with allegations concerning Allen Davis, the twenty-five [25] year old promoted months prior to Plaintiff's termination. Pl.'s Mem. Br. in Opp'n to Mot. for Summ. J. p. 4; Ex. "D" to Pl.'s Mem. Br. in Opp'n to Mot. for Summ. J. In RIF cases, where employees are discharged and the employer has no plan to replace those employees, the fourth element of the prima facie case is satisfied where, "after the discharge others who were not members of the protected class remained in similar positions." *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (*citing Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990). In non-RIF cases, the fourth element is likewise satisfied where others similarly

---

[1]Plaintiff's brief identifies employee Renee Wallace as a "similarly situated" employee who was treated more favorably than Plaintiff. Wallace–a Caucasian day shift secretary–was offered an evening shift but was not terminated when she refused it. However, OpTech had made the decision to consolidate two day-shift secretary positions and create a new night-shift position. The other secretary took the night-shift position when Wallace decided not to take it. Therefore, Wallace's position was never eliminated. The evidence does not support that Wallace was so similarly situated to Plaintiff so as to survive a prima facie examination. Further, because the Court finds that Plaintiff has met his prima facie race discrimination burden for purposes of summary judgment analysis, the Court need not address this contention any further.

situated but not within the protected class are treated more favorably.  *See Eaves,*
193 F.Supp.2d at 893.  The flaw in Plaintiff's case, however, is failure to produce
sufficient evidence supporting the proposition that Davis' Assistant Project
Manager position–or any other [younger] employee's position–were so similar to
that of his Engineering Technician position as to infer age discrimination on behalf
of OpTech.  It is not disputed that a portion of Plaintiff's job duties were reassigned
to Davis months before Plaintiff's termination.  However, Plaintiff has not set forth
sufficient evidence demonstrating the percentage of those duties, or, whether he–at
the time of termination–was performing any of the same duties as Davis so as to
make the two positions similar in any regard.  Nor has Plaintiff offered sufficient
evidence with regard to OpTech's treatment of Davis that would tend to show he
was otherwise discriminated against because of his age.

Further, Plaintiff would be unable to succeed on an age discrimination claim
with regard to OpTech's reassignment of Plaintiff's duties to Kevin Hall following
Plaintiff's discharge, or, OpTech's appointment of Angela Guthrez to the Warehouse
Manager position.[2]  The record reflects that Hall was only six [6] months younger

---

[2]  Plaintiff's deposition identified OpTech's treatment of both Allen Davis and
Kevin Hall as the only evidence supporting his age discrimination claim.  Pl.'s
Depo. at p. 79-80, Exhibit "A-2" to Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J.
Plaintiff later identified Angela Guthrez as "a few years" younger than himself,
though he did not assert–at any point in his Memorandum Brief in Opposition to
Defendant's Motion to Summary Judgment or in his deposition–that this
information supported an age discrimination claim.  Id. at p. 118.  Plaintiff
acknowledged that Renee Wallace was older than himself.  Id. at p. 76-77.  *See also*
Ex. "D" to Pl.'s Mem. Br. in Opp'n to Mot. for Summ. J.

than Plaintiff, and Guthrez was approximately two [2] years younger than Plaintiff. Defs.' Rule 30(b)(6) Depo. at p. 58, Exhibit "3" to Defs.' Mot. for Summ. J.; Pl.'s Depo. at p. 77-78, 118, Exhibit "A-2" to Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J; Ex. "D" to Pl.'s Mem. Br. in Opp'n to Mot. for Summ. J.  An overwhelming number of the circuits have held that "age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 338 (6 th Cir. 2003); *see also Girten v. McRentals*, 337 F.3d 979, 981 (8th Cir. 2003); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000); *Williams v. Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000); *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1166 (10th Cir. 2000); *Wassel v. Mutual Life Ins. Co.*, 164 F.3d 633, 1995 Wl 323801, at *1 (9th Cir. 1995).  The Fifth Circuit has not stated a bright line rule, but has noted that a five year age difference is a "close question." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).  Based on these authorities, a six month age difference and a two year age difference are insufficient to establish a prima facie case of age discrimination.  Even if they were sufficient to make out a prima facie case, this would not help Plaintiff in the final analysis, as discussed below.

   2. *Defendant's Legitimate, Nondiscriminatory Response*

   Assuming that the Plaintiff was able to satisfy his prima facie age and race discrimination cases, the burden then shifts to OpTech to articulate legitimate, nondiscriminatory reasons for Plaintiff's termination.  OpTech has submitted admissible evidence to support its position that: 1) that there were insufficient job

responsibilities to retain the Engineering Technician function; and, 2) that Plaintiff

was not the best candidate for the Warehouse Management function due to his

untoward and negative attitude concerning the position at the time it was discussed

with him.  Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J. p. 9-10.   Because OpTech

has offered legitimate, nondiscrimatory reasons for its treatment of Plaintiff, the

Court finds that OpTech has successfully rebutted any initial inference of

discrimination.  In order to survive summary judgment, Plaintiff must show that

the proffered grounds were a pretext for discrimination.

### 3.  *Plaintiff's Burden of Showing Pretext*

Plaintiff provides insufficient admissible evidence demonstrating that

OpTech's reasoning was a mere pretext for age or race discrimination, or, that

OpTech's reasoning–while true–was only one reason for its conduct, and another

motivating factor was Plaintiff's age and race.  To succeed at the pretext stage of

the *McDonnell Douglas* analysis, the Plaintiff must do more than merely discredit

the defendant's reasoning; the Plaintiff must *prove* that the articulated reason is a

pretext.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515-516 (1993); *see also

Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir. 1997).  Mere subjective assertions,

without more, is not enough to provide relief under the discrimination laws.  *See

Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434-435 (5th Cir. 1995).

Plaintiff contends that OpTech gave "different" reasons for terminating

Plaintiff, thereby challenging the veracity of the proffered reasons; however, as

discussed *supra*, OpTech's reasons are not inconsistent with one another.  The
Plaintiff has offered insufficient admissible evidence probative on the issue of
whether OpTech discharged Plaintiff *because of* his age or race, and has not
produced "evidence from which the jury [could] reasonably reject the employer's
explanation and from which the jury [could] find that the employer's reason was
mere pretext for discrimination." *Ellison v. Darden Restaurants, Inc.*, 52 F.Supp.2d
747, 752 (S.D. Miss. 1999).  The discrimination laws are "not intended to be a
vehicle for judicial second-guessing of business decisions, nor...to transform the
courts into personnel managers." *Bienkowski v. American Airlines, Inc.*, 851 F.2d
1503, 1507-08 (5th Cir. 1988).  For the reasons set forth herein, this Court finds
that based on the undisputed facts, and viewing the evidence in the light most
favorable to Plaintiff, summary judgment is appropriate as to Plaintiff's race and
age discrimination claims.[3]

_____

[3]In examining the record as a whole and taking the evidence in the light most
favorable to the Plaintiff, the Court likewise examined the Plaintiff's possible
success where the adverse employment actions were defined as 1) failure of OpTech
to promote Plaintiff over Davis, and/or 2) the reassignment of Plaintiff's job
responsibilities to Davis.

It is undisputed that the failure of an employer to promote an employee
qualifies as an adverse event.  *See Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282
(5th Cir. 2004).  However, for the reallocation of Plaintiff's job responsibilities to
qualify as an adverse event, the "change in the terms and conditions of employment
must be more disruptive than a mere inconvenience or an alteration of job
responsibilities.  A materially adverse change might be indicated by...*significantly*
diminished material responsibilities...."  *Crady v. Liberty Nat. Bank and Trust Co.
Of Indiana*, 993 F.2d 132 (7th Cir. 1993) (*emphasis added*).  Courts within the Fifth
Circuit follow this line of guidance.  *See Young v. Houston Lighting & Power Co.*, 11
F.Supp.2d 921 (S.D. Tex.  1998).  Plaintiff has not demonstrated any evidence other
than mere alteration of his job duties.  Further, the Fifth Circuit has found no

B. <u>Retaliation Claim</u>

      The anti-retaliation provision of Title VII states that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

---

inference of discrimination where a portion of an employee's duties are reassigned to another employee months prior to the plaintiff's termination. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651,655 (5th Cir. 1996)(finding a lapse of sixteen [16] months between plaintiff's reassignment of duties and termination insufficient to establish an inference of discrimination).

      Assuming Plaintiff could meet his prima facie burden as to a failure to promote claim, there is nothing in the record indicating that Plaintiff would be able to satisfy his ultimate burden of proof. To establish pretext in such cases, Plaintiff would need to prove 1) that he was clearly better qualified than Davis for the promotion, or, 2) that the employer's proffered explanation was false or unworthy of credence. *See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408 (5th Cir. 2007). As stated in the original analysis, Plaintiff has offered insufficient evidence capable of overcoming OpTech's reasonings for discharging Plaintiff. Additionally, Plaintiff provided no evidence that he was *clearly* better qualified than Davis. This is a very high burden and requires Plaintiff to show that "no reasonable person...could have chosen the candidate selected over [Plaintiff]." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001). Further, to survive summary judgment, the unfairness of the employer's decision must be so apparent as to jump off the record and "slap [the court] in the face." *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993). Other than stating that engineering functions were given to Davis, Plaintiff has offered no actual evidence. There is nothing in the record suggesting that the duties reassigned to Davis were in fact truly engineering duties, nor is there any evidence offered suggesting that Davis was not qualified. In fact, Davis' resume shows that he had a year of training in civil engineering. Ex. "A" of Aff. of Michael J. Bohlke, Ex. "4" to Defs.' Mot. for Summ. J. Plaintiff offers no evidence showing that he was better qualified in any other respect for the Assistant Operations Manager position.

42 U.S.C. § 2000e-3(a).

To survive a motion for summary judgment, a plaintiff must prove by a preponderance of the evidence, 1) that the engaged in activity was protected by Title VII, 2) that an adverse employment action occurred, and, 3) that a causal connection existed between the protected activity and the adverse employment action. *See Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001). Once the prima facie case has been proved, the same *McDonnell Douglas* burden-shifting framework employed in discrimination cases controls. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). In essence, a plaintiff must present sufficient evidence that the adverse action would not have occurred "but for" the protected conduct. *See Strong v. University HealthCare System, LLC*, 482 F.3d 802, 806 (5th Cir. 2007).

The general rule is that only those persons named in an EEOC charge are subject to suit under Title VII, however, an exception has been created to identify successors as named parties. *See Simon v. Kelso Marine, Inc.*, 19 Empl. Prac. Dec. 9053 (S.D. Tex. 1979). Whether successor liability should be imposed in a discrimination case is examined by the following nine factors: 1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; 2) the ability of the predecessor to provide relief; 3) whether there has been a substantial continuity of business operations; 4) whether the new employer uses the same plant; 5) whether he uses the same or substantially the same work force; 6) whether the same jobs exist under

-20-

substantially the same working conditions; 8) whether he uses the same machinery, equipment, and methods of production; and, 9) whether he produces the same product. *See Rojas v. TK Communications, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996); *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974). Of these factors, the first two are critical, while the remaining seven merely "provide a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor employers." *Rojas*, 87 F.3d at 750.

In this instance, Plaintiff claims that OpTech retaliated against him for an earlier EEOC claim he filed against the City for an incident unconnected to this case, which occurred in or about August 2002. Pl.'s Mem. Br. in Opp'n to Mot. for Summ. J., p. 2. Prior to the City's contract with OpTech, the City created a new Public Works Manager position which incorporated the City Engineer duties and responsibilities. Id. When Plaintiff was not hired for the position, but an allegedly less qualified Caucasian was hired, he filed a charge of discrimination against the City with the EEOC. Id. at 2-3. Plaintiff alleges that his treatment by OpTech in this case was in retaliation for filing the earlier EEOC claim against the City.

Plaintiff offers no evidence that OpTech had any knowledge of this EEOC charge. Actual knowledge, not constructive knowledge, is critical to a retaliation claim against a successor employer. *See Rojas*, 87 F.3d at 750; *see also Mato v. Baldauf*, 267 F.3d 444, 452-453 (5th Cir. 2001). As to the other factors necessary to impute liability, Plaintiff offers no supporting evidence, but argues that genuine

issues of material fact exist as to each.  Even if the Court assumes Title VII liability

can be attributable to OpTech, Plaintiff fails to carry the remainder of his burden

under this charge.

Nor has Plaintiff submitted sufficient evidence to establish his prima facie

case of retaliation.  It is undisputed that the filing of the EEOC complaint against

the City was a protected activity within the purview of Title VII, and it is equally

undisputed that Plaintiff later suffered adverse employment action when he was

terminated by OpTech.  However, Plaintiff fails to produce any evidence

demonstrating the requisite causation link between the two events.

To carry his ultimate burden, Plaintiff must discredit OpTech's non-

discriminatory reasons for his discharge by proving–by a preponderance of the

evidence–that "the adverse employment action...*would not have occurred 'but for'*

*[the] protected conduct.*"  *Strong v. University HealthCare System, LLC*, 482 F.3d

802, 806 (5th Cir. 2007) (*citing Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th

Cir. 2005))(*emphasis added*).  The Court finds insufficient evidence in the record to

support the proposition that Plaintiff's termination would not have happened "but

for" the earlier EEOC complaint he filed against the City.  The following excerpt

from Plaintiff's deposition evidences his inability to prove causation:

Q:   What evidence do you have that what happened in January of '04 was
     in retaliation for some claim that you filed against the City of
     Pascagoula?

A:   Because the situations are similar.  They are the same.  Because it was
     a job taken away as to the same thing that happened, the OpTech job
     taken away.  It's similar, the same thing.  Whatever happened at the

> job that–the situation that happened with Pascagoula, OpTech did the same thing.  And that was a retaliation to what the City of Pascagoula did.
>
> Q:     Is that all the evidence you have, sir?
>
> A:     As far as that point for the claim, yes.

Pl.'s Depo. at p. 70, Exhibit "A-2" to Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J.

> Q:     You're alleging that your discharge by Operations Technology was a result or in retaliation for a charge of discrimination filed by you against the City of Pascagoula?
>
> A:     That would be my opinion.
>
> Q:     Well, do you have any evidence of that other than what we previously discussed?
>
> A:     That would be all.

Pl.'s Depo. at p. 106, Exhibit "A-2" to Pl.'s Mem. Br. in Opp'n to Mot. For Summ. J.

The foregoing evidence fails to satisfy Plaintiff's causation burden. Additionally, the lapse in time between the protected activity (the filing of the EEOC complaint against the City, in or about August 2002) and the adverse employment action (the January 2004 discharge by OpTech) are suggestive that OpTech's retaliatory motive was highly unlikely.  *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding a lapse in time of ten [10] months to be highly suggestive that no retaliation occurred).

Plaintiff has not adduced sufficient evidence to permit a jury to reasonably infer that OpTech's justification for Plaintiff's termination is unworthy of credence or is a pretext for retaliation.  For the foregoing reasons, the Court finds that there

are no disputes of material fact as to Plaintiff's retaliation claim, and that
Defendant is entitled to judgment as a matter of law.

C.  Emotional Distress Claim

Plaintiff confesses judgment as to the state law emotional distress claim
contained in his Complaint.  Pl.'s Mem. Br. in Opp'n to Mot. for Summ. J. p. 1, 15.
No further examination as to this assertion will be made.  Plaintiff set forth no
other state law claims in his Complaint.

### III.  CONCLUSION

In summary, viewing the evidence in the light most favorable to Plaintiff, the
Court finds that Plaintiff can satisfy his burden of establishing a prima facie case of
race discrimination but cannot do so with respect to his age discrimination and
retaliation claims.  Plaintiff cannot meet his burden of demonstrating that OpTech's
proffered reasons for his termination were a pretext for either race or age
discrimination.  For the reasons stated more fully herein, there is insufficient
evidence to establish genuine issues of material fact as to Plaintiff's race
discrimination, age discrimination, and retaliation claims.  No reasonable jury
could conclude that the Defendant acted with discriminatory intent based on the
*McDonnell Douglas* analysis.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons
more fully cited herein, the Motion of Operations Technologies, Inc., for Summary
Judgment, filed February 21, 2007, pursuant to FED. R. CIV. P. 56, should be and is
hereby **GRANTED**, and this civil action is hereby dismissed, with prejudice.

**SO ORDERED AND ADJUDGED**, this the 7th day of August, 2007.


*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE